PETROPLUS, JUDGE:
This case was formerly tried before the Court as Claim No. D-332.* The claimant alleged in the former hearing that applications of calcium chloride, sodium chloride, rock sale, and other chemical solutions to U.S. Route 50 on the Allegheny Front, near the intersection of Route 50 and Route 5 in Mineral County, West Virginia, over *178 a period of time destroyed his water supply, which came from a well, making the water unusable for human consumption and other domestic uses. The claimant also contended that the pollution of his well destroyed his tourist stop business as well as his health and that of his wife, resulting from the drinking of contaminated water from the well. The respondent denied all of the allegations except that calcium chloride and other chemicals were applied to the road surface in reasonable amounts to impede freezing and make travel safe in the mountainous area of the Allegheny Front.
The case was tried on the claim of negligence and excessive and unreasonable use of chemicals on the roadway surface. The Court concluded in the former hearing that the claimant had not sustained the burden of proof required of him by law and had not established that his property rights and the reasonable enjoyment of his property had been invaded by any wrongful act of the respondent. The Court also ruled that the claimant had made little or no effort to mitigate damages but continued to use the contaminated water until he was forced to suspend his business and seek medical treatment for the health problems.
Admitting that it was well settled law that adjoining property owners have correlative rights and must use their property in a reasonable manner so as not to injure the property of their neighbors, the Court made a finding that in balancing the conflicting interests of the traveling public and the protection of adjacent private property, the interest of the traveling public should prevail in this case, and further that a reasonable use of deicing chemicals on a public road is not actionable. The Court further found that the damages for loss of business, illness and medical expenses were consequential and not proximately caused by the deicing procedures.
The claim was kept open for additional proof on whether the contamination and pollution of the claimant’s water supply came from the improper and haphazard storage of chemicals in open bins on a higher elevation of about 600 feet from the claimant’s property.
On May 20, 1974, a rehearing was held and the plaintiff proceeded on the theory that the pollution of his water supply was directly and proximately caused by the improper storage of chemicals in open bins in the proximity of the claimant’s property.
Sufficient and persuasive evidence was introduced that large quan- *179 titles of salt were stored on the respondent’s land in such a manner that the action of rain and melting snows would cause the salt to impregnate the surrounding land, and that the improper storage methods of the State were responsible for the pollution of the claimant’s well. Photographs were introduced by the claimant depicting a most haphazard storage of chemicals in bins exposed to the weather and showing a spreading of the salt solution over a wide area surrounding the bins. As the record now stands, the method of storage depicted in said photographs does establish a causal connection with the claimant’s damages.
A neighbor of the claimant who had a similar pollution problem was able to rectify it by purchasing water purification equipment for the sum of approximately $1900.00. The equipment improved the quality of the water but not its taste.
The claimant testified that he drilled a new well on the property which gave an unsatisfactory quantity and quality of water unfit for use, and that water was hauled to the site of his property in order to keep the business operating. The cost of drilling the new well was $621.00 and the water, although not palatable, was sufficient for the restrooms and other purposes.
After considering all of the evidence on damages, the cost of purification equipment which might have remedied the situation, and the expense incurred in efforts to secure another water supply, it is the opinion of the Court that an award of $6,600.00 should fairly compensate the claimant for the damages incurred as the result of the State’s negligence. The Court finds it most difficult to treat the property as a total loss for business and dwelling purposes, and the claim for loss of business during a period of four years is disallowed as consequential damage. The claims for sickness and medical expenses incurred as a result of drinking polluted water are also disallowed as consequential, and proof adduced that this sickness resulted from drinking the polluted and contaminated water is unsatisfactory. Further, being aware of the bad condition of the water, the claimant assumed the risk of physical consequences that would result from drinking the unpalatable water.
For the foregoing reasons, the Court recommends an award in the amount heretofore stated.
Award of $6,600.00.

 See Henderson v. Department of Highways, 9 Ct. Cl. 183.